556 So.2d 210 (1990)
Vernon Richmond DRAPER, Plaintiff,
v.
Elizabeth Anderson Kenimer DRAPER, Defendant.
No. 21152-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1990.
*211 Tyler & Johnson, D.G. Tyler, Shreveport, for plaintiff.
James L. Fortson, Shreveport, for defendant.
Before HALL, C.J., and MARVIN and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Elizabeth Draper, mother of a minor, appeals a trial court judgment on rule granting sole custody of that child to the father, Vernon Draper. We amend in part and affirm.

FACTUAL AND PROCEDURAL HISTORY
Vernon and Elizabeth Draper were married in Georgia in 1980. A child, John Lafayette Draper, was born May 15, 1986, shortly after they moved to Bossier City, Louisiana. On January 13, 1988, Mrs. Draper left the marital domicile and returned, with the minor, to her parents' home in Greensboro, Georgia. Mr. Draper then petitioned for separation and also custody of the child, securing a rule nisi concerning custody pendente lite and visitations. Mrs. Draper reconvened, seeking the same relief and a similar rule. Although the parties never received a judgment of separation and the custody hearing was continued several times, Mrs. Draper eventually secured temporary custody of the child by stipulation and without prejudice to either party. Visitation rights were granted to the father and child support established.
Subsequent to the filing of the petition for separation, the parties and their families were repeatedly embroiled in heated confrontations. These more than once became physical, and often occurred at locations where the child was exchanged in connection with visitations. A petition for divorce was filed by Mr. Draper on February 17, 1989, and apparently remains pending.
Trial of the rules nisi concerning provisional custody, after beginning on September 8, 1988, was adjourned and completed on December 12 and 13, 1988. At the conclusion of the trial, the judge awarded the father sole custody and the mother specific visitation privileges.
Mrs. Draper now appeals, assigning error in the award of custody to Mr. Draper. Among other assertions, she contends that the only issue raised by Mr. Draper as a basis for his custody claim, her alleged denial of his visitation with the child, is insufficient alone to support an award of sole custody to the father. She seeks reversal of the lower court judgment and to *212 be granted sole custody or, in the alternative, joint custody with her being designated as the domiciliary parent.

DISCUSSION
LSA-C.C. Art. 146 A(1) and (2) provide as follows:
A. If there are children of the marriage whose provisional custody is claimed by both husband and wife, the suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children:
(1) To both parents jointly. The court shall, unless waived by the court for good cause shown, require the parents to submit a plan for implementation of the custody order.... A plan of implementation shall allocate the time periods each parent shall enjoy physical custody of the children and the legal authority, privileges and responsibilities of the parents....
(2) To either parent. In making an order for custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent, and shall not prefer a parent as custodian because of that parent's sex or race. The burden of proof that joint custody would not be in a child's best interest shall be upon the parent requesting sole custody.
Upon appellate review the determination of the trial judge in a child custody case is entitled to great weight and will not be disturbed unless a clear showing of abuse of discretion is made. Stephenson v. Stephenson, 404 So.2d 963 (La.1981); Peters v. Peters, 449 So.2d 1372 (La.App. 2d Cir. 1984); Carroway v. Carroway, 441 So.2d 494 (La.App. 2d Cir. 1983). An appellate court is required to give great weight to factual conclusions of trial courts which are based on reasonable evaluations of credibility and reasonable inferences of fact. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir. 1979), writ denied, 374 So.2d 660 (La.1979); Canter v. Koehring Co., 283 So.2d 716 (La. 1973); S.J. v. S.M., 505 So.2d 897 (La.App. 2d Cir. 1987); Kennedy v. Bearden, 471 So.2d 871 (La.App. 2d Cir.1985); Brents v. Gulf Ins. Co., 465 So.2d 860 (La.App. 2d Cir.1985), writ denied, 469 So.2d 984 (La. 1985). The trial judge is in a better position to evaluate the credibility of witnesses and the weight of evidence than an appellate court which does not hear or see the witnesses. For this reason a reviewing court should adopt the trial court's finding as its own in the absence of clear error, even if other conclusions from the same evidence were equally reasonable. Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir. 1986).
In awarding sole custody of the child to Mr. Draper, the trial court stated, in pertinent part:
This is a case, no question in my mind, it's not a joint custody situation, and at some point in the future, it may well be.... It just saddens me that ... this anger that you feel towards each other is clouding what's in the best interest of the child.... [C]oncerning the contempt matter ... I'm gonna give Ms. Draper the benefit of the doubt, and I'm not gonna find her in contempt.... The law charges me to do what's in the best interest of the child without regard to sex.... One of the factors that should be considered in making an order for custody is ... among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the non-custodial parent.... I have regrettably found and do make a finding that as of this time, joint custody would not be in the best interest of the child.... I'm gonna award sole custody of the child to Vernon Draper....
[F]actor[s] in the sole custody of course [are] what we've talked about the geography involved in the case, the rancor between the persons, [and] the medical well-being of the child insofar as the transfers back and forth....
I think that you (Mr. Draper) probably have [had] as bad ... feelings about your wife as she does of you, but I think *213 you've been able to control ... your anger and bad feelings.... I want the maximum sharing allowed under our laws on sole custody and if it doesn't allow any, I'm gonna order that there be some sharing of information concerning medical reasons, education, welfare of the child.... I'm allowing obviously more ... lengthy time of visitation than is normal.
Because of the strong presumption in the law favoring joint custody and in keeping with Mrs. Draper's alternate request, we will first address the propriety of a joint custody decree. Under the provisions of LSA-C.C. Art. 146, there exists a rebuttable presumption that joint custody is in the best interest of the child. However, there is no such presumption when one of the parties moves out of the state. LSA-C.C. Art. 146 K; Key v. Key, 519 So.2d 319 (La.App. 2d Cir.1988); Stewart v. Stewart, 525 So.2d 218 (La.App. 1st Cir. 1988). While the language of LSA-C.C. Art. 146 K concerns only the cessation of the presumption after an original joint custody decree has been made, its rationale obviously applies with even greater force where a parent moves out of state before a custody decree is rendered. Of course, the distance between the parents' residences is a relevant factor in any custody decision. LSA-C.C. Art. 146 C(2)(k).
Here, then, the presumption favoring joint custody did not exist. And, even though the absence of the presumption does not mandate sole custody, Key v. Key, supra, the trial court determined that joint custody was not in the best interest of the minor child.
In Stewart v. Stewart, supra, there was much animosity between the parties and the mother was forced, by her second husband's job, to move to Alabama. Joint custody had been granted in an earlier consent decree. When the father filed a petition seeking a change in the custody, the mother reconvened. The trial court dissolved the joint custody agreement and awarded sole custody to the mother. The First Circuit affirmed, stating as follows:
While a great distance between the parents is not an absolute bar to joint custody, in this case the distance coupled with the animosity between the parties is sufficient to rebut the presumption that joint custody is in the best interest of the child....
Similarly, the present record vividly discloses continuing extreme animosity between the parents. Indeed, considering the evidence, it is almost certain that a joint custody decree at this time would be ineffective and only serve to further foment disagreement by the parties. The trial court additionally noted the factors of geographical distance between the two homes and the child's physical welfare. Considering those aspects, we are persuaded, as was the trial court, that joint custody is not presently in the best interest of the child. Hence, appellant's alternate request for joint custody is rejected. We concur that the better approach is an award of sole custody to either parent under the provisions of LSA-C.C. Art. 146 A(2).
Neither do we disagree with the trial court's decision that Mr. Draper is the appropriate parent to be granted that custody. Appellant's contention, that the trial court gave undue weight to the problems that arose concerning the father's visitations, is not impressive. There clearly was much animosity between the parties, and that hostility caused Mrs. Draper to be flagrantly less than enthusiastic and cooperative toward visitation efforts by the father. It was appropriate that the court consider that negative mind-set in deciding whether Mrs. Draper would likely accommodate the father's future endeavors at continuing contact with his child. On at least one occasion, the mother was accused of contempt in connection with a court-ordered visitation. The trial judge, although failing to find her guilty, remained unconvinced that her excuse for not complying was valid. In short, the record does not indicate the lower court gave disproportionate attention to visitation problems.
Under the provisions of LSA-C.C. Art. 146 A(2), in making a sole custody award, consideration is mandated as to which parent *214 is more likely to allow the child frequent and continuing contact with the non-custodial parent. After three days of testimony, the trial judge concluded that Mr. Draper would be more likely to respect the child's right of access to both parents. Dr. Thomas E. Staats, the court-appointed psychologist, supported that conclusion. He observed that Mrs. Draper had more negative comments to make about the father than vice versa, and that the father appeared to be the more rational of the two parties.
We, as apparently did the trial court, entertain concern over Mrs. Draper's willingness to facilitate continuing contact between the father and son. Indeed, at one point in her testimony, she implied that she does not want to talk with the father, even by phone. We cannot find error in the trial court's conclusion that Mr. Draper would better provide continuing contact between the child and his mother, as contrasted to the opposite circumstance.
Appellant additionally argues that the trial court, in its determination of custody, erred in considering actions of the maternal grandparents. Concerning the mental and physical health of Mrs. Draper's parents, nothing detrimental appears in the reasons for judgment. Yet the record clearly reflects deep-seated enmity by the maternal grandparents toward the father. The grandmother cursed him in the courtroom and agreed her husband "literally despises" him. The grandfather struck Mr. Draper in the face with a rock in one instance and "armed" himself with the same object to do so on another occasion. The grandparents' home is located less than a block from Mrs. Draper's residence. The child and his mother have visited the grandparents on a daily basis since the separation, and also have had an evening meal with them about half the time. Under these circumstances, it does not appear unrealistic to evaluate whether such bitterness as shown here would likely eventually affect a child's image of either of its biological parents. Nor does it constitute error to consider that factor in the best interest determination. Each custody case must be decided on its own facts, with much discretion afforded the trial court. Roberts v. Roberts, 460 So.2d 1151 (La.App. 2d Cir. 1984).
Finally, appellant argues that the trial court failed to sufficiently weigh stability of environment. Of course, such a factor is important in deciding the child's best interest. Bailey v. Bailey, 527 So.2d 1030 (La.App. 2d Cir. 1988). However, stability is not the sole determinative factor. Daugherty v. Cromwell, 501 So.2d 955 (La. App. 2d Cir.1987). The child in our present case has spent the majority of his life with both parents living in the home. Mrs. Draper left that residence in January of 1988 and the custody trial concluded less than a year later. The child's life with his mother after the separation had been anything but stable, due to his frequent traveling and transferring necessitated by the litigation. Under these facts, stability and continuity had not played such a significant role in John's life as to mandate a finding that his best interest required his remaining with the mother. Compare Johnston v. McCullough, 410 So.2d 1105 (La.1982), wherein stability was considered a major factor in the determination of custody in an instance of a child residing with one parent for seven years.
Although we affirm the trial court determination granting sole custody to the father, it is almost certain that Mrs. Draper's involvement with her son's life will be regrettably impaired because of the considerable geographical distance between the parties. Considering that situation, the trial court appropriately rendered a liberal visitation schedule for the mother. However, we note that Mrs. Draper is afforded only sporadic contact with the child in the months of November through early spring in those years when she is not granted a visitation during the Christmas holidays. We therefore amend the trial court judgment to award her a two week visitation period in odd numbered years, commencing at 6:00 p.m. on January 1, and ending at 6:00 p.m. two weeks later.
Accordingly, the trial court judgment is amended and affirmed at appellant's cost.
*215 AMENDED AND, AS AMENDED, AFFIRMED.